UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KELLIE GADOMSKI, individually and on behalf of all other similarly situated,

    Plaintiff,

v.

WELLS FARGO BANK N.A.,

    Defendant.

No. 17-cv-00691-TLN-AC

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

This matter is before the Court pursuant to Defendant Wells Fargo Bank N.A.'s ("Defendant") Motion to Compel Arbitration. (ECF No. 11.) Plaintiff Kellie Gadomski ("Plaintiff") opposes the motion. (ECF No. 15.) Defendant filed a reply. (ECF No. 16.) After carefully considering both parties' briefing, the Court hereby GRANTS Defendant's Motion to Compel Arbitration. (ECF No. 11.)

///
///
///
///
///

1

### I.    FACTUAL AND PROCEDURAL BACKGROUND

The claims at issue arise out of the parties' dealings regarding a consumer credit account ("the Account") Defendant provided to Plaintiff.  (ECF No. 1 at ¶ 158; ECF No. 12 at 5.)  On September 5, 2009, Plaintiff signed a Preferred Customer Credit Card Application ("the Application").  (Ex. A, ECF No. 12-1 at 7; ECF No. 12 at 5; ECF No. 1 at ¶ 158.)  The Application specifically states, "You acknowledge receipt of a copy of the credit card account agreement. You acknowledge the existence of the arbitration agreement contained in the credit card account agreement and you specifically agree to be bound by its terms."  (Ex. A, ECF No. 12-1 at 7.)  Further, the Arbitration Agreement ("the Agreement") states, "if any party covered by this agreement elects arbitration, that election is binding on all parties to this Agreement."  (Ex. B, ECF No. 12-1 at 18.)

Sometime in 2012, Plaintiff fell behind on her credit card payments, prompting Defendant to "charge off" the Account.  (ECF No. 1 at ¶ 159.)  Then on or about April 23, 2013, Plaintiff filed for Chapter 7 Bankruptcy ("the Bankruptcy Action").  (ECF No. 1 at ¶ 114.)  Plaintiff's debts owed to Defendant were scheduled and included in the Bankruptcy filing.  (ECF No. 1 at ¶ 115.)  Defendant was informed of the Bankruptcy Action filing.  (ECF No. 1 at ¶ 116.)

On or about August 12, 2013, Plaintiff's debts were successfully discharged in the Bankruptcy Action.  (ECF No. 1 at ¶¶ 117, 121.)  On the same day, Defendant received notice of Plaintiff's discharged debt.  (ECF No. 1 at ¶ 118.)  Plaintiff did not reaffirm the debt obligation to Defendant.  (ECF No. 1 ¶¶ 136, 142, 171.)

Plaintiff alleges that on November 13, 2016, Defendant reported, or caused to be reported, inaccurate information on an Equifax credit report.  (ECF No. 1 at ¶ 160.)  Additionally, Plaintiff alleges the same inaccurate information was reported in a TransUnion credit report on the same day.  (ECF No. 1 at ¶ 161.)  Plaintiff alleges this information is inaccurate because Defendant classified the debt as "charged off," rather than "discharged in Bankruptcy," which represented to potential creditors that Plaintiff was actively delinquent with respect to the debts owed to Defendant, when in actuality, the debts were no longer owed to Defendant.  (ECF No. 1 at ¶¶ 124, 125, 134.)

Once aware of these inaccuracies, Plaintiff disputed the report in writing with Equifax and TransUnion. (ECF No. 1 at ¶ 177.) On or about December 2016, Plaintiff received notification from Equifax and TransUnion stating Defendant had been notified of the dispute. (ECF No. 1 at ¶ 180.) Plaintiff alleges that, rather than fix the inaccuracies, Defendant failed to correct the problem and continued to report inaccurate information. (ECF No. 1 at ¶ 182.)

Further, Plaintiff alleges that, because of Defendant's inaccurate reporting, her credit worthiness was damaged. (ECF No. 1 at ¶¶ 164, 194.) As a result of the alleged reporting inaccuracies, Plaintiff alleges Defendant has violated section 1681 of the Fair Credit Reporting Act ("FCRA") and section 1785.1 of the California Consumer Credit Reporting Agencies Act ("CCCRAA"). (ECF No. 1 at ¶¶ 208, 212.)

Moreover, Plaintiff seeks to bring this claim on behalf of all those similarly situated. (ECF No. at ¶ 196.) Specifically, Plaintiff alleges this class is made up of potentially hundreds of thousands of individuals who had a consumer credit report prepared on or after February 2012, inaccurately depicting debts owed to Defendant as "charged off," rather than "discharged in bankruptcy." (ECF No. at 1 ¶ 197.) Consequently, Plaintiff asserts the class is entitled to recover economic damages for the inaccurate reporting. (ECF No. 1 at ¶ 198.)

Defendant brings this Motion to Compel Arbitration of Plaintiff's claims. (ECF No. 12 at 5.)

**II.    STANDARD OF LAW**

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 et seq. Under the FAA, a district court determines (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). Arbitration agreements are "a matter of contract" and "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, and unconscionability.'" *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010).

If the court is "satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitral issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (U.S. 1983). If a court "... determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration. *Hoekman v. Tamko Bldg. Prod., Inc.*, No. 2-14-CV-01581-TLN-KJN, 2015 WL 9591471, at *2 (E.D. Cal. Aug. 26, 2015).

### III. ANALYSIS

Defendant contends Plaintiff's claims arise from the parties' dealings regarding the Account and are thus subject to arbitration. (ECF No. 12 at 10.) Plaintiff responds with three arguments: (1) the Agreement is unenforceable; (2) the issues presented are outside the scope of the Agreement; and (3) even if the Agreement is enforceable, Plaintiff's claims are subject to the "small claims exception"[1] in the Agreement. (ECF No. 15 at 3–8.) The Court will analyze these arguments in order.

#### A. Enforceability

Plaintiff first argues the Agreement was rendered unenforceable because of the Bankruptcy Action. (ECF No. 15 at 5–6.) However, Plaintiff offers no cases from the Ninth Circuit that stands for the proposition that a bankruptcy discharge renders a valid arbitration agreement unenforceable. Defendant responds to this argument contending Plaintiff's bankruptcy did not invalidate the Agreement. (ECF No. 16 at 5.)

The Ninth Circuit has stated that a bankruptcy discharge does not mean the whole contract has been merged into the judgment. *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 531 (9th Cir. 1998). A bankruptcy discharge "extinguishes only the personal liability of the debtor."

---

[1] According to the terms of the Agreement, "this [Agreement] shall apply only to disputes in which the borrower seeks to recover for himself or herself an amount of money, not including attorney fees and costs, that exceeds the jurisdictional dollar amount of the small claims court." The Jurisdictional limit for California small claims court is $10,000. Cal. Civ. Proc. Code § 116.221.

4

*Johnson v. Home State Bank*, 501 U.S. 78, 83, (1991) (citation omitted). Further, post-bankruptcy discharge arbitration is appropriate where there would be no adverse effect on the underlying purposes of the bankruptcy code. *See e.g. Bigelow v. Green Tree Fin. Servicing Corp*, No. CV-99-6644, 2000 WL 33596476, at *6 (E.D. Cal. Nov. 30, 2000).

Moreover, another district court has applied this reasoning to a post-bankruptcy claim brought under FCRA and found arbitration appropriate. *See e.g. Mann v. Equifax Info. Servs.*, LLC, No. 12-CV-14097, 2013 WL 3814257, at *3 (E.D. Mich. July 22, 2013). The facts of *Mann* are strikingly similar to this case. In *Mann*, the plaintiff brought claims under FCRA and state law after obtaining a bankruptcy discharge, alleging the defendants listed debts on his credit report that were discharged. *Id.* at *5. In its analysis, the court distinguished *Jernstad v. Green Tree Servicing*, LLC, No. 11 C 7974, 2012 WL 8169889, at *1 (N.D. Ill. Aug. 2, 2012), which is relied on by Plaintiff. *Id*. at *8–9. The court explained the plaintiff's claims in *Jernstad* all arose from the bank's attempt to collect on a discharged debt,[2] unlike the claims brought under the FCRA and state law. *Id.* at *8. The court then analyzed, *In re Eber*, 687 F.3d 1123, 1125 (9th Cir. 2012), and concluded that the proper inquiry was whether compelling arbitration conflicts with the underlying purpose of the bankruptcy code. *Id.* In rejecting the plaintiff's argument that arbitration would prevent him from obtaining the "fresh start" granted by the bankruptcy code, the court explained "the mere fact that *Mann* was granted a discharge of *debt* owed to [the creditor] does not mean that the Arbitration Agreement … cannot be enforced with respect to their future disputes." *Id* (emphasis retained).

The Court finds this reasoning persuasive. Here, Plaintiff's claims relate solely to Defendant's alleged inaccurate reporting of debts as "charged off," rather than "discharged in bankruptcy," and not Defendant's attempts to collect a discharged debt. (ECF No. 1.) Plaintiff's only argument that compelling arbitration conflicts with the bankruptcy code is that doing so would prevent her from obtaining a fresh start. (ECF No. 15 at 5; ECF No. 1 at ¶ 110.) However,

---

[2] Similarly, cases relied on by Plaintiff to show an arbitration agreement is unenforceable post-bankruptcy discharge all deal with claims where the creditor was attempting to collect on debt that had been discharged. *See e.g. Harrier v. Verizon Wireless Pers. Commc'ns LP*, 903 F. Supp. 2d 1281, 1282 (M.D. Fla. 2012) (alleging phone calls and emails from creditor concerning discharged debt); *In re Jorge*, 568 B.R. 25, 27 (Bankr. N.D. Ohio 2017) (alleging numerous phone calls and letters concerning a discharged debt).

5

the Court agrees with the court's reasoning in *Mann* that "simply enforcing a provision which defines the venue for resolving the instant dispute does not deprive [plaintiff] of [a] 'fresh start' granted by the bankruptcy code." *Id.* at *9. As a result, the Court finds Plaintiff's argument unpersuasive.

Thus, Plaintiff failed to establish that arbitration is unsuitable for her claims because the Agreement was rendered unenforceable. *See Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 81 (2000) ("the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.")

### B. Scope of the Agreement

Next, Plaintiff contends that it is the role of this Court to determine the scope of the Agreement. (ECF No. 15 at 3–5.) In other words, Plaintiff wants this Court to determine whether the parties' dispute is one encompassed by the Agreement. Defendants respond by arguing that when parties clearly and unmistakably delegate the issue of arbitrability to the arbitrator, that delegation must be enforced. (ECF No. 16 at 3.)

Plaintiff is partly correct that when deciding to enforce an arbitration agreement, courts must decide whether the agreement covers the dispute as a gateway issue. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). However, it is well settled "that parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). When making this determination, "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so." *See e.g. First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995); *see also e.g. United Bhd. of Carpenters & Joiners of Am.*, *Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996) (explaining that "where the parties clearly and unmistakably provide otherwise, the courts will be divested of their authority and an arbitrator will decide in the first instance whether a dispute is arbitrable").

Rather than attempt to show that the language at issue in the Agreement does not encompass the issue of arbitrability, Plaintiff instead states, "despite the language in [the

6

Agreement] that purports to remove the Court's power to determine the scope of [the Agreement], the Court must determine the scope [of the Agreement], not an arbitrator." (ECF No. 15 at 4.) This is a nebulous assertion. The Agreement explicitly states, "[a] claim may include, but shall not be limited to, *the issue of whether any particular claim must be submitted to arbitration*." (ECF No. 12-1 at 18.) (emphasis added). This is clear and unmistakable evidence that the parties intended to encompass the issue of arbitrability within the Agreement.

Accordingly, whether Plaintiff's claims arising under FCRA and CCCRAA are within the scope of the Agreement must be decided by the arbitrator.

### C. Small Claims Exception

Lastly, Plaintiff contends that, even if the Agreement is enforceable, arbitration should still be denied because Plaintiff's individual claim and the individual claims of all others similarly situated will not exceed $10,000 and are thus subject to the "small claims exception" in the Agreement. (ECF No. 15 at 7–8.) As Defendant correctly points out, in essence, Plaintiff contends that despite the aggregate value of the class claims, her class action complaint is subject to the "small claims exception" contained in the Agreement. (ECF No. 16 at 10.) Defendant responds by arguing that Plaintiff's claims clearly exceed the jurisdictional limit of small claims court. (ECF No. 16 at 9.)

Plaintiff fails to provide authority for her contention and fails to analyze a case from this district rejecting Plaintiff's small claims exception argument. *See e.g. Botorff v. Amerco*, No. 2:12-CV-01286-MCE, 2012 WL 6628952 (E.D. Cal. Dec. 19, 2012). In *Botorff*, the plaintiff brought claims under California's Unfair Competition Law. *Id.* at *5. The plaintiff attempted to argue that the claims were not subject to an arbitration provision because the claims fell within a small claims exception. *Id.* In *Botorff*, just as here, the plaintiff argued that her individual claims would not exceed the jurisdictional limit nor would the claims relating to potential individual class members. *Id.*

However, as explained by the court in *Botorff*, the flaw in Plaintiff's logic is that neither she nor the other similarly situated class members are moving forward as individuals. *Id.* at *6. Instead, Plaintiff alleges Defendant improperly characterized the discharged debt on the credit

reports of all individuals who had their debt owed to Defendant discharged in bankruptcy on or after February 2012. (ECF No. 1 at ¶ 197.) Plaintiff seeks to represent those potentially "hundreds of thousands, if not more" by way of a class action. (ECF No. 1 at ¶ 199.) Based on this assertion, the Court concludes that Plaintiff's claims create a "dispute …. that exceeds the jurisdictional dollar limit of the Small Claims Court." (Ex. B, ECF No. 12-1 at 18.) Surely, Plaintiff was free to assert her claims on a strictly individual basis in small claims court. However, that is not what she chose to do.

Consequently, the Court finds the "small claims exception" inapplicable to Plaintiff's claims because the potential class of hundreds of thousands of individuals ensures the claims would exceed the jurisdictional limit of California's small claims court.

### D. Whether to Dismiss or Stay

Having decided the Agreement is enforceable and that all Plaintiff's claims are subject to arbitration, the Court is within its discretion to dismiss the complaint under Rule 12(b)(6). *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1176 (C.D. Cal. 2008) (citing *Thinket Ink Info. Res., Inc. v. Sun Microsystems*, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004)). If a court ... determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration." *Hoekman v. Tamko Bldg. Prod., Inc.*, No. 2-14-CV-01581-TLN-KJN, 2015 WL 9591471, at *2 (E.D. Cal. Aug. 26, 2015) Consequently, because both claims are to be arbitrated, the Court dismisses Plaintiff's claims in favor of arbitration.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel Arbitration, (ECF No. 11.) is GRANTED, and Plaintiff's claims are dismissed pursuant to Rule 12(b)(6). The Clerk of the Court is directed to close the case.

IT IS SO ORDERED

Dated: December 31, 2017

Troy L. Nunley
United States District Judge